FILED

2009 DEC 28 AM 10: 07

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION and THE PEOPLE OF THE STATE OF CALIFORNIA, by and through the CALIFORNIA CORPORATIONS COMMISSIONER,<br><br>Plaintiffs,<br><br>vs.<br><br>MOHIT A. KHANNA, an individual, and MAK 1 ENTERPRISES GROUP, LLC, a Nevada limited liability company,<br><br>Defendants; and<br><br>FIRST OPPORTUNITIES MANAGEMENT GROUP, INC., a Nevada corporation,<br><br>Relief Defendant. | Case No. 09-cv-01783-BEN-CAB<br><br>CONSENT ORDER OF PERMANENT INJUNCTION AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANT MOHIT A. KHANNA |

On August 17, 2009, the U.S. Commodity Futures Trading Commission ("Commission") and the State of California ("California"), by and through the California Corporations Commissioner, (collectively "Plaintiffs") filed a complaint seeking injunctive and other equitable relief, restitution and civil monetary penalties, among other things, against defendants Mohit A. Khanna ("Khanna") and MAK 1 Enterprises Group, LLC ("MAK 1") (collectively "Defendants"), and against relief defendant First Opportunities Management Group, Inc. ("First

Opportunities") for violations of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 1 et seq. (2006) ("Complaint").

Contemporaneous with the filing of the Complaint, the Commission moved this Court *ex parte* for a Statutory Restraining Order ("SRO") and an Order to Show Cause why a preliminary injunction should not issue. On August 19, 2009, the Court granted the motion and entered a SRO that, among other things, froze assets under the control of the defendants and relief defendant, required an accounting of assets, prohibited the destruction of documents and appointed a receiver.

On September 3, 2009, this Court entered a Consent Order of Preliminary Injunction that prohibited further violations of the Act by Defendants and continued the SRO.

## I.

## CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint without a trial on the merits or any further judicial proceedings, Khanna

1. Consents to the entry of this *Consent Order of Permanent Injunction and Other Statutory and Equitable Relief Against Defendant Mohit A. Khanna* ("Order").

2. Affirms that he has agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

3. Acknowledges service of the Summons and Complaint.

4. Admits that this Court has jurisdiction over them and the subject matter of this case, and that venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

5. Waives: (a) any and all claims that he may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Regulations, 17 C.F.R. §§ 148.1 *et seq.* (2009), relating to, or arising from, this action; (b) any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act, 1996 HR 3136, Pub. L. 104-121, §§ 201-253, 110 Stat. 847 (1996), as amended by 2007 HR 2206, Pub. L. No. 110-28, § 8302, 121 Stat. 112 (2007), relating to or arising from this action; (c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and (d) all rights of appeal from this Order.

6. Neither admits nor denies any of the findings and/or conclusions made in this Order or the allegations contained in the Complaint, except as to jurisdiction and venue, which he admits. However, Khanna agrees that the allegations of the Complaint and all of the findings and conclusions made by this Court and contained in Part II of the Order shall be taken as true and correct and be given preclusive effect, without further proof, for the purpose of: any bankruptcy proceeding filed by, on behalf of, or against Khanna, whether inside or outside of the United States; a Commission registration proceeding relating to him; and/or any proceeding or to enforce the terms of this Order.

7. Shall provide immediate notice of any bankruptcy filed by, on behalf of, or against him in the manner required by Part V, paragraph 4 of this Order.

8. Agrees that the Court shall order Khanna to pay restitution and a civil monetary penalty pursuant to the Act. Khanna further agrees that prejudgment interest shall be due on both the civil monetary penalty and the restitution amounts, and that such prejudgment interst shall accrue beginning on July 9, 2009, based on the rate of interest set forth in 26 U.S.C. §

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

6621(a)(2) (2006).

9. Agrees that, unless Khanna and Plaintiffs file a consent order specifying amounts of restitution and civil monetary penalty within thirty days of the Receiver's determination identifying Defendants' clients consistent with the provisions of Part IV, below, the amounts of the restitution and/or civil monetary penalty shall be determined by the Court upon motion of the Commission, and Khanna further agrees that in connection with the Commission's motion for restitution and/or civil monetary penalty, and at any hearing held on such motion: (a) Khanna will be precluded from arguing that he did not violate the federal laws or state laws as alleged in the Complaint; (b) Khanna may not challenge the validity of this Consent or the Judgment; (c) for the purposes of such motion, the allegations of the Complaint and the findings of fact and conclusions of law in this Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for restitution and/or civil monetary penalty, the parties may take discovery.

10. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Order, or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect Khanna's (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission and/or California are not parties. Khanna shall take all necessary steps to ensure that all of his agents and employees

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

understand and comply with this agreement.

11. Acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based upon the entry of the injunction in this action, Khanna understands that he shall not be permitted to contest either the factual allegations of the Complaint or the findings of fact and conclusions of law in this Order.

12. Consents to the continued jurisdiction of this Court for the purpose of: determining the amounts of restitution and civil monetary penalty; enforcing the terms and conditions of this Order; and for any other purpose relevant to this action, even if any of the Defendants now or in the future reside outside the jurisdiction.

## II.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of findings of fact, conclusions of law and a permanent injunction and ancillary equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), as set forth herein.

**FINDINGS OF FACT**

1. Khanna, through MAK 1, fraudulently solicited and accepted at least $16.4 million

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

of customer funds from at least 122 individuals, located primarily in southern California, to trade for or on behalf of such individuals, managed accounts and/or a pooled investment (the "pool") in connection with agreements, contracts or transactions in foreign currency that are margined or leveraged "pooled forex."

2.  Khanna, directly and through others, solicited individuals to trade pooled forex through direct solicitations, word-of-mouth, a prospectus and other written solicitations.

3.  Khanna held himself out as MAK 1's Chief Executive Officer and investment manager. He solicited clients directly, executed customer and other agreements in the name of MAK 1, communicated with MAK 1 clients concerning their investments and redemptions requests, and, as the sole signatory, controlled MAK 1 bank accounts.

4.  Khanna met with prospective clients. In those meetings, Khanna and others explained that Defendants offered trading in pooled forex. Khanna also told prospective clients that he had several years of experience trading at a large investment firm and used a proprietary trading system.

5.  In his solicitations of at least one prospective client, Khanna claimed to have approximately 125 clients and $50 million under management. At other times, apparent agents of Defendants stated that Defendants have $500 million or more in assets under management.

6.  Khanna offered short term participation in the pool, typically for 21 to 30-day terms with guaranteed returns of 45% or more.

7.  After clients made their initial investments, Khanna quickly showed them purported returns and pressured them to roll-over or continue their investments. Based on these representations that initial investments were profitable, many of the known clients reinvested their purported profits and made additional investments under existing or new terms.

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

8. In his oral solicitations, Khanna emphasized that clients' principal and interest were guaranteed, Federal Deposit Insurance Corporation and Securities Investor Protection Corporation insured, and further protected by a MAK 1 insurance policy. Khanna also touted the use of the MAK 1 automated trading platform, purportedly one he developed. Khanna told at least one prospective client that his trading earned such high returns because he had enough money in reserves to cover all investments.

9. In these solicitations, Khanna did not disclose the risks of trading pooled forex.

10. Khanna provided prospective and existing clients with a prospectus and disclosure document entitled, "Prospectus and Disclosure Document MAK 1 Enterprises Group, LLC Asset Management Account" ("Prospectus"). Khanna also made the Prospectus available on MAK 1's website, www.mak1enterprises.com.

11. The Prospectus provided that MAK 1 was the general partner and trading advisor of each Series of the MAK 1 Asset Management Account investment. MAK 1 clients understood that Khanna directed any purported trading.

12. In the Prospectus, MAK 1 claimed to offer a "series of individual foreign currency CD units: CSFSB, DBALXB, BGTUSA," but did not otherwise define these units. According to the Prospectus, each series traded in the U.S. and foreign currency markets using the trading system developed by MAK 1, and "[e]ach Series is a leveraged investment managed by an experienced, professional trading advisor and it trades in a wide range of currencies." As evidenced by the Prospectus, the foreign currency transactions offered by Defendants did not provide for delivery within two days or create an enforceable obligation to deliver between a seller and a buyer that had the ability to deliver and accept delivery.

13. The Prospectus downplayed the risks of trading leveraged foreign currency

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

contracts, stating that the MAK 1 "Asset Management Account" is "not volatile" and "the net asset value [of the investment] does not fluctuate." The Prospectus also reiterated Defendants' oral promises that "you [the investor] will not lose all of your investment in each series." In setting forth potential market risk and the "possible total loss of an investment", the Prospectus stated that "currency CD contracts do not have a high degree of price variability and are not subject to occasional rapid and substantial changes." The Prospectus also provides that MAK 1 is entitled to management fees and operating fees.

14. The Prospectus included a performance record for the Asset Management Account (i.e., the pool) since the account's purported inception in 2002. The performance record showed consistent profitable returns with steady growth from 8% in 2002 to 27% in 2008. Defendants boasted of achieving such consistent double-digit returns over six years even in down markets. This performance record is false.

15. Khanna did not disclose in the oral solicitations of prospective or existing clients, in the Prospectus or otherwise that, in 2004, Khanna was barred from the securities industry by the National Association of Securities Dealers (NASD) (now known as the Financial Industry Regulatory Authority (FINRA)) in connection with alleged false representations to public customers.

16. Khanna provided at least some of the clients with a Certificate of Liability of Insurance ("Certificate") to purportedly show that the client investments were protected against loss by the insurance policy. Many clients understood this and Khanna's oral representations to mean that their investments were insured against loss. However, the insurance broker who issued the Certificate informed clients that the policy does not cover client investments.

17. After securing the initial investments, Khanna continually urged clients to make

Order of Permanent Injunction, Case No.  09-cv-01783-BEN-CAB

additional investments and to "roll-over" their accounts into longer term contracts, which many did. In at least one instance, Khanna began soliciting additional investments only one week after the initial investment and showing the client a positive return.

18. Prospective and existing clients relied upon all of the misrepresentations and omissions described above in deciding to invest, reinvest and/or remain invested with Defendants.

19. As of the end of July 2009, known MAK 1 bank accounts had minimal to no funds in them.

20. Khanna transferred MAK 1 client funds to First Opportunities, which also is a Nevada corporation incorporated in June 2007. Khanna is the president of First Opportunities and the mailing address of First Opportunities is the same as MAK 1. First Opportunities did not provide any legitimate services to MAK 1 clients and had no legitimate entitlement to any MAK 1 clients' funds it received.

21. From the First Opportunities bank accounts, Khanna paid for apparent personal expenses, including multiple cars and at least one mortgage.

22. Khanna provided clients with Internet access to their account statements. Clients' account statements consistently showed substantial returns on their interests in the pool.

23. In early 2009, some clients requested distributions of their purported profits reflected on their account statements. Khanna was either late in sending distribution checks, failed to respond, or sent checks that were returned for insufficient funds.

24. As clients made repeated demands for their funds, Khanna offered varying excuses and used delaying tactics, usually blaming purportedly recently implemented banking regulations that prevented release of funds or paperwork or accounting problems to explain why checks were

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

failing to clear.

25. To reassure clients, Khanna sent an email on February 29, 2009, stating that the company had grown and prospered over the course of the past six years despite the negative market conditions. Khanna attached a letter to the email, dated February 26, 2009, from Defendants' purported long time accountant, in which the accountant represented he had reviewed MAK 1 financial information, including corporate records, and the records represented that Khanna had $50 million in his bank account. Khanna stated in the email, "I hope this information was a source of comfort to you, and it provides a source of great pride for me."

26. Nevertheless, actual statements for the same account show that, at the close of business on February 26, 2009, the account had a balance of approximately $43,000.

27. Khanna misappropriated client funds in order to return funds to some clients, and for personal use.

**CONCLUSIONS OF LAW**

28. By the conduct identified above, Khanna cheated or defrauded or attempted to cheat or defraud other persons; issued or caused to be issued false statements; and willfully deceived or attempted to deceive other persons in connection with offering of, or entering into the margined or leveraged foreign currency transactions alleged herein, for or on behalf of such persons, by fraudulently soliciting prospective and existing clients, making material misrepresentations and omissions, including but not limited to guaranteeing monthly profitable returns, falsely claiming to have $50 million in assets, misrepresenting that he was an experienced foreign currency trader, failing to adequately disclose the risks of trading off-exchange leveraged foreign currency contracts, failing to disclose his ban from the securities industry, misappropriating client funds, and making oral and written false statements or reports to customers concerning their

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

investments, all in violation of Sections 4b(a)(2)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A) and (C).

29. Furthermore, in or in connection with margined or leveraged foreign currency contracts, transactions or agreements made or to be made, for or on behalf of other persons, Khanna willfully made or caused to be made false reports or statements to clients or prospective clients by, among other things, knowingly providing clients fraudulent monthly account statements or balances that misrepresented the value of customers' accounts and customers' holdings, in violation of Section 4b(a)(2)(B) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(2)(B).

30. Khanna engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

31. Each act of fraudulent solicitation, misappropriation and false statement or report, including but not limited to those specifically alleged herein, is a separate and distinct violation of Sections 4b(a)(2)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C).

32. Khanna offered to sell and sold or purchased commodities and entered into commodity contracts in California, and in particular the Southern California area, including San Diego and Los Angeles, and their transactions fail to qualify under any exceptions or exemptions in violation of Cal. Corp. Code Section 29520.

33. Khanna willfully omitted and willfully made untrue statements of material facts and engaged in fraudulent schemes in connection with the purchase and sale of, the offer to sell, the offer to purchase, the offer to enter into, and the entry into, commodities and commodity contracts in violation of Cal. Corp. Code Section 29536.

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

## III.

## ORDER FOR PERMANENT INJUNCTION

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. The defendant Khanna shall be permanently restrained, enjoined and prohibited from directly or indirectly engaging, directly or indirectly in:

   a. conduct in violation of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C);

   b. trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

   c. entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) for his own personal account or for any account in which he has a direct or indirect interest;

   d. having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on his behalf;

   e. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

   f. soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

   g. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

   h. acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

      i.      conduct in violation of Cal. Corp. Code Sections 29520 and 29536.

2.      The injunctive provisions of this Order shall be binding upon Khanna, upon any person who acts in the capacity of officer, agent, employee, attorney, successor and/or assign of Khanna and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with Khanna.

## IV.

## STATUTORY AND EQUITABLE RELIEF

**IT IS FURTHER ORDERED THAT:**

1.      Khanna shall pay full restitution (including prejudgment and post-judgment interst) to each of Defendants' identified clients, the amounts to be specified once the Receiver completes his determination ("Restitution Obligation"). If the parties do not file a consent order specifying the amount the parties agree is full restitution within thirty days of the Receiver completing said determination, the Court will schedule a hearing to determine the appropriate amount of restitution. Khanna shall pay this first be paid to the Receiver appointed by this Court in this case for distribution to Defendants' clients and, after the termination of the Receivership, to a monitor to be appointed by the Court for further distribution to Defendants' clients consistent with the authority granted to the monitor until the Restitution Obligation is fully satisfied.

2.      Khanna shall pay a civil monetary penalty (including prejudgment and post-judgment interst) in an amount to be specified at the time the parties specify the amount agreed to as full restitution as set forth in paragraph IV(1) above ("CMP Obligation"). Again, if the parties do not file a consent order specifying the amount the parties agree is an appropriate civil

Order of Permanent Injunction, Case No.   09-cv-01783-BEN-CAB

monetary penalty within thirty days of the Receiver completing his determination, the Court will schedule a hearing to determine the appropriate civil monetary penalty.

3. In connection with any motion to determine the amount of restitution and/or civil monetary penalty, and at any hearing held on such a motion: (a) Khanna will be precluded from arguing that they did not violate the federal and state laws as alleged in the Complaint; (b) Khanna may not challenge the validity of their consents and agreements herein or this Order; (c) for the purposes of such motion, the allegations of the Complaint and the findings and conclusions in this Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with any such motion to for restitution and/or civil monetary penalty, the parties may take discovery, including discovery from appropriate non-parties.

4. All payments by Khanna pursuant to this Order shall first be applied to Satisfaction of the Restitution Obligation. After satisfaction of the Restitution Obligation, Khanna's payments pursuant to this Order shall be applied to satisfy the CMP Obligation. All payments after satisfaction of the restitution shall be applied to the civil monetary penalty amount to be determined by the Court.

5. Khanna shall cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, as well as California, in any current or future investigation, civil litigation or administrative matter related to the subject matter of this action. Including cooperating fully with the Plaintiffs in their investigation of: a) the amount of funds

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

and proceeds received by Defendants, and losses to Defendants' clients; and b) the identification of Defendants' assets. Khanna shall comply fully, promptly, and truthfully with any inquires or requests for information from the Commission, including but not limited to, requests for production and authentication of documents and shall provide assistance at any trial, proceeding, or Commission hearing, including but not limited to, requests for testimony, depositions, and/or interviews, and shall testify completely and truthfully in any such proceeding, trial, or investigation and consistent with the statements and information he provided the Commission. Khanna shall also cooperate with the Receiver in his administration of the Receivership estate, including, but not limited to, cooperating with the Receiver in any actions filed by the Receiver.

## V.

## MISCELLANEOUS PROVISIONS

1.     If any provision of this Order or the application of any provision or circumstance is held invalid, the remainder of this Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding.

2.     Upon being served with copies of this Order after entry by the Court, Khanna shall sign an acknowledgment of such service and serve such acknowledgment on the Commission within seven (7) calendar days.

3.     This Court shall retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees, including orders setting the appropriate amounts of restitution and civil monetary penalty, that may be entered herein, to entertain any suitable application or motion for additional relief within the jurisdiction of this Court, and to assure compliance with the Order.

Order of Permanent Injunction, Case No.   09-cv-01783-BEN-CAB

4. All notice required to be given by any provision in the Order shall be sent by certified mail, return receipt requested, as follows:

Notice to the Commission:   James H. Holl, III, Esq.
                                                    Chief Trial Attorney
                                                    Commodity Futures Trading Commission
                                                    1155 21st Street, NW
                                                    Washington, D.C. 20581

5. In the event that Khanna changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of the new number(s) and/or address(es) to the Commission within ten calendar days thereof.

**SO ORDERED**, this _28_ day of _Dec._, 2009.

_____
Hon. Roger T. Benitez
UNITED STATES DISTRICT JUDGE

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

Consented to and approved for entry by:

Defendant:

_____
Mohit A. Khanna, *pro se*

Attorneys for Plaintiff U.S. Commodity Futures Trading Commission:

_____
James H. Holl, III
Chief Trial Attorney
Gretchen L. Lowe
Associate Director
1155 21st Street NW
Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5538

Attorneys for Plaintiff The People of the State of California, by and through the California Corporations Commissioner:

_____
Joyce Tsai
California Corporations Counsel
1350 Front Street, Suite 2034
San Diego, CA 92101
Telephone: (619) 525-4043
Facsimile: (619) 525-4045

Order of Permanent Injunction, Case No. 09-cv-01783-BEN-CAB

Consented to and approved for entry by:

Defendant:

_____
Mohit A. Khanna, *pro se*

Attorneys for Plaintiff U.S. Commodity Futures Trading Commission:

_____
James H. Holl, III
Chief Trial Attorney
Gretchen L. Lowe
Associate Director
1155 21st Street NW
Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5538

Attorneys for Plaintiff The People of the State of California, by and through the California Corporations Commissioner:

_____
Joyce Tsai
California Corporations Counsel
1350 Front Street, Suite 2034
San Diego, CA 92101
Telephone: (619) 525-4043
Facsimile: (619) 525-4045

Order of Permanent Injunction, Case No.  09-cv-01783-BEN-CAB